IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICKY SCOTT,          )<br>                       )<br>    Plaintiff,      )<br>                       )           No. 09 C 2201<br>                       )<br>    v.                 )           Hon. Ronald A. Guzmán<br>                       )<br>CITY OF CHICAGO, KENNETH )<br>TAYLOR, and CARLIE YOUNG, )<br>                       )<br>    Defendants.        )<br>                       ) | |

**MEMORANDUM OPINION AND ORDER**

On July 21, 2011, the jury returned a verdict for defendants and against the plaintiff on all claims in this case. The Court entered judgment on the verdict. Plaintiff has filed a motion renewing his Federal Rule of Civil Procedure ("Rule") 50 motion for judgment as a matter of law pursuant to Rule 50(b), or, in the alternative, for a new trial pursuant to Rule 59. For the reasons given below, the motions are denied.

Under Rule 50, a jury verdict must stand unless the movant demonstrated that no rational jury could have rendered the verdict it did. *Thomas v. Cook County Sheriff's Dept.*, 588 F.3d 445, 451 (7th Cir. 2009). The jury verdict should not be disturbed so long as there is a "legally sufficient evidentiary basis for its verdict." *Id.* (quoting *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008)). In passing on a motion for a new trial, however, "the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial. . . . If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate." *Mejia v. Cook County,* 650 F.3d 631, 633 (7th Cir. 2011).

Whether the defendant officers' conduct was a mere investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 21 (1968), and its progeny, or a full custodial arrest of plaintiff was a contested issue in this case. Plaintiff's argument is that when defendants approached his vehicle with their weapons drawn, handcuffed him and placed him in their squad car, they had, as a matter of law, conducted a full custodial arrest. But the distinction between an investigatory stop and a formal arrest depends on the intrusiveness

of the detention, "which is a 'flexible and highly fact-intensive' inquiry." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) (citing *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995)).

In the case at bar, defendants testified that a security guard told them that students complained of an individual riding around Calumet High School, wearing a bandana, possibly with a weapon, scaring the students. (Mot. New Trial, Ex. 1, Trial Tr. Excerpt at 7:7-13; 7:24-8:4; 69:1-69:11.) The defendant officers testified that the plaintiff drove by their parked car and Officer Taylor saw plaintiff wearing a bandana across his face. (*Id.* at 75.) The defendant officers then activated their emergency lights, and plaintiff pulled to the side of the road. (*Id.* at 76-77.) When the defendant officers approached plaintiff's vehicle, they suspected plaintiff was the individual that the students had complained about and they had their weapons drawn. (*Id.* at 21:11-13; 77:25-78:2.). Officer Taylor testified that he approached with his gun drawn because plaintiff matched the description given as the individual with a possible weapon, and so "[he] didn't know what [he] was up against when [he] approached [plaintiff's] window." (*Id.* at 77:8-13; 103:1-4.) The defendant officers testified that plaintiff was placed in handcuffs because he would not obey Officer Taylor's command to turn around and keep his hands on the trunk of plaintiff's car. (*Id.* at 33:1-2; 33:9-11; 86:4-7; 86:10-11; 103:25-104:4.) After plaintiff failed to comply after being asked several times to turnaround and keep his hands on the trunk, the defendant officers placed plaintiff in handcuffs. (*Id.* at 38:10-11; 38:14-18; 86:21-23.) When plaintiff was being handcuffed, Officer Taylor told plaintiff that he was being handcuffed for plaintiff's own and the defendant officers' safety, but he was not under arrest. (*Id.* at 39:10-13; 86:21- 87:3.) During the time of plaintiff's stop, there were students on the corner of 81st and Racine getting on the bus to go home. (*Id.* at 43:24-25.) Plaintiff was placed in the squad car so that the defendant officers could further their investigation without making a scene in front of the students or have the students gather around plaintiff. (*Id.* at 43:24-44:1; 107:16-23.) While plaintiff was thus detained, the defendant officers were running a name and license plate check.

Plaintiff's testimony painted quite a different picture. According to plaintiff, the defendant officers verbally abused him by cursing at him when they initially approached his car. When Officer Taylor approached plaintiff, he yanked on the bandana around plaintiff's neck four or five times. Once plaintiff was escorted to the back of his vehicle the defendants screamed at him and violently pushed him onto the trunk. Plaintiff also claims that while he was being detained, the defendants were searching his car, not running his name or license plate. Depending on which of these two sets of testimony, or what combination of the two, the jury believed, it could reasonably have concluded that plaintiff was under arrest or that he was merely being detained pursuant to an investigatory stop.

Plaintiff argues that when defendants approached his vehicle with their weapons drawn, handcuffed him and placed him in their squad car, they had, as a matter of law, conducted a full custodial arrest. In support of this contention, plaintiff cites *Wolinksy*, No. 99 C 2995, 2000 WL 631292, at *2 (N.D. Ill. May 12, 2000) (Hibbler, J.), *Thompson v. Wagner,* 319 F.3d 931, 935 (7th Cir. 2003), and *United States v. Brown*, 233

Fed. Appx. 564, 566 (7th Cir. 2007). But these cases are not dispositive of the issue in the case at bar. In *Wolinksy*, the court analyzed plaintiff's pleadings in a § 1983 practice and policy claim alleging the inadequate training of proper handcuffing techniques for Chicago police officers. 2000 WL 631292, at *2. The court never addressed what circumstances transformed an investigatory stop into a full custodial arrest. *Id.* In *Thompson,* the *C*ourt held that the defendant officers were not protected by qualified immunity when they arrested plaintiff without probable cause. 319 F.3d at 935. The court addressed the issue of an investigatory stop in a single line, concluding that the plaintiff's handcuffing and detention could not be justified as an investigatory stop because the defendant officers did not make any "attempt to say their actions were necessary for their own protection." *Id.* Finally, in *Brown*, the defendant-appellant moved to suppress the introduction of evidence at trial because he alleged that he was not under arrest when officers searched him. 233 Fed. Appx. at 566. In that case, when the officers stopped the defendant appellant, he fled the scene and assaulted the officers. Both officers had to wrestle with him. *Id.* at 567. The officers sprayed him with pepper spray, handcuffed him, and locked him in the squad car. The court held that the defendant-appellant was under arrest. *Id*. at 568. None of these cases are sufficiently similar to the case at bar to sustain plaintiff's argument that the evidence in this case requires a finding as a matter of law that plaintiff was immediately placed under a full custodial arrest.

*Terry v. Ohio*, of course, established the concept of an investigatory stop. 392 U.S. at 19 n.16. In *Terry*, the defendant was observed engaging in behavior which an experienced law enforcement officer concluded was "casing a job, a stick-up." *Id.* at 6. Furthermore, in *Terry*, the constitutional seizure occurred when the officer "frisked" the defendant as a measure of self- protection after having approached him and asked him questions on the street. *Id.* at 19-20. Actions needed to reasonably protect an officer otherwise engaged in conduct which is not a traditional search or seizure were sanctioned by the *Terry* court on reasonable suspicion – a lesser standard than probable cause to arrest. *Id.* at 30-31. This case differs from the *Terry* situation in that the initial stop here was not a seizure constituting a protective frisk for the purpose of protecting police officers otherwise engaged in conduct that does not constitute a search or seizure. In contrast to the *Terry* situation, the seizure in the present case was for the specific purpose of initiating investigatory questioning because of the officer's reasonable suspicion that the defendant was in the process of committing a crime. In *Terry*, the officer's initial investigation, questions to the defendants on the street, did not itself involve any constitutional seizure because the defendant was not detained at the time the officer questioned him. *Id.* at 28. Only after initiating the questions did the officer feel the need to frisk the defendant thereby engaging in a constitutional seizure. *Id.* It was this protective pat down search that the Supreme Court concluded was permissible on a reasonable suspicion basis. *Id.* at 30-31. In the case at bar, the initial detention occurred when the defendant's car was pulled over. The reason for the initial stop of the automobile was not to protect the officers, but to further investigate the suspicion of criminal activity.

However, in *United States v. Vega*, 72 F.3d 507, 515-16 (7th Cir. 1995), the Seventh Circuit sanctioned a *Terry* stop in a situation involving a stop of an automobile on the basis of reasonable suspicion that the automobile was transporting a controlled substance. The analysis in that case makes it clear that the Seventh Circuit has no objection to the use of the *Terry* stop rationale in a situation such as the one before us, although that specific objection was not raised by the defendant in *Vega*. The bulk of the discussion in that case pertained to whether the length and manner of the "stop," which included handcuffs, removal from the automobile and the use of drug sniffing dogs which had to be called to the scene, was such as to go beyond the "brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity" authorized by *Terry*. *Id.* Interestingly, the *Vega* court was reluctant to sanction such a long and intrusive detention on mere suspicion.

> Nevertheless, we have over the years "witnessed a multifaceted expansion of Terry . . . For better or for worse, the trend has led to the permitting of the use of handcuffs, the placing of weapons and other measures of force more traditionally associated with arrest than with investigatory detention." *United States v. Tilmon*, 19 F.3d 1221, 1224-25 (7th Cir. 1994). "Unfortunately, the line between a lawful Terry stop and an unlawful arrest is not bright." *United States v. Smith*, 3 F.3d 1088, 1095 (7th Cir. 1993).

*Id.* at 515.

Thus, the *Vega* court sanctions the use of *Terry* stop criteria in a situation such as the one at bar. Further, the definition utilized in *Vega*, a brief detention which gives officers a chanced to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity, fits the facts of the case before us. *See United States v. Askew*, 403 F.3d 496, 508-09 (7th Cir. 2005) (defendant's car stopped while driving through a parking lot on reasonable suspicion of engaging in a drug transaction); *United States v. Fiasche*, No. 05-CR-765, 2006 WL 695395, at *6 (N.D. Ill. Mar. 10, 2006) (defendant's automobile stopped on reasonable suspicion of transporting drug proceeds based upon corroborated information from an informant).

Numerous subsequent Seventh Circuit opinions have made clear that the use of handcuffs, placing a suspect into a squad car and officers' drawing their weapons does not always convert an investigatory stop into a full custodial arrest.

> Whether Bullock's seizure amounted to a de facto arrest when he was handcuffed, placed in the squad car, and transported to the residence is a closer question. Admittedly, the facts here approach the outer boundaries of a permissible *Terry* stop. "Subtle, and perhaps tenuous, distinctions exist between a *Terry* stop, a *Terry* stop rapidly evolving into an arrest and a *de*

> *facto* arrest." *Tilmon,* 19 F.3d at 1224. Police restraint may become so intrusive that, while not technically an "arrest," it becomes "tantamount" to an arrest requiring probable cause. *Id.* (citing *Dunaway v. New York,* 442 U.S. 200, 212-16, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979)). "Given the 'endless variations in the facts and circumstances,' there is no 'litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop' and becomes an arrest." *Id.* (quoting *Royer,* 460 U.S. at 506, 103 S.Ct. 1319). The question is whether the officer's actions were reasonable under the circumstances and whether the surrounding circumstances gave rise to a justifiable fear for personal safety on the part of the officer. *Jewett v. Anders,* 521 F.3d 818, 824 (7th Cir. 2008).

*United States v. Bullock* , 632 F.3d 1004, 1016 (7th Cir. 2011). Under the facts of this case, the jury could reasonably conclude that the initial seizure did not exceed the bounds of an investigative stop and, thus, required only a reasonable suspicion. As described in *Bullock*, the jury in this case was presented with evidence of several possible combinations of facts during a situation which could reasonably have been interpreted as a *Terry* stop, an arrest, or a *Terry* stop evolving into, at some point, an arrest. The officers, for example, testified that the plaintiff refused to follow their directive to keep his hands on the back of the car and thus, they handcuffed him solely for reasons of personal safety concerns. Thus, their use of handcuffs was more in keeping with what has been approved in investigative stop situations than with a full custodial arrest. Because of the conflicting evidence regarding the chain of events in this case; what the officers actually did and said, what they knew at time of the stop and in sequence thereafter, their intentions, the circumstances in the surrounding area and the plaintiff's reaction to being stopped, the jury was properly allowed to determine whether what occurred was a *Terry* stop, an arrest or a *Terry* stop evolving into, at some point, an arrest.

     Plaintiff argues that when defendant officers approached his vehicle with their weapons drawn, handcuffed him and placed him in their squad car, they had, as a matter of law, conducted a full custodial arrest. But, as pointed out above, the distinction between an investigatory stop and a formal arrest depends on the intrusiveness of the detention, "which is a flexible and highly fact-intensive' inquiry." *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) (citing *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995)). On the evidence in this case, the jury could reasonably conclude that the initial seizure did not exceed the bounds of an investigative stop for which the officers needed only a reasonable suspicion.

     Plaintiff argues that Earnest Goodwin's testimony should have been barred because defendants failed to disclose the subject matter of Earnest Goodwin's anticipated testimony, in violation of Rule 26(a). Goodwin testified that on April 18, 2008, he was a security guard at Calumet High School and during that same month, he remembers overhearing students complaining that an individual was in the neighborhood wearing a

clown mask or bandana. Goodwin's name and address were first disclosed by plaintiff in his *Fourth Supplemental Rule 26(a) Disclosures* on April 4, 2012 – more than a year before the trial. In addition, both plaintiff and defendants disclosed him as a possible witness in the Final Pretrial Order, and his name was read to the prospective jurors during jury selection as a person who may be a witness in the case or whose name may come up during the course of the case. Any argument that plaintiff was taken by surprise by the existence of this witness is specious.

Plaintiff, however, argues that this amount of disclosure is insufficient and that under Rule 26(a), defendants should have disclosed that they spoke to this witness. Not so. Rule 26(a) includes no such requirement. Plaintiff further argues that under Rule 26(a), defendants should have disclosed the subject matter of the witness' expected testimony. Not quite. Rule 26(a) requires disclosure of the subject matter of the discoverable information a potential witness may have. But plaintiff already knew the subject matter of the discoverable information. Plaintiff himself disclosed that Mr. Goodwin "was assigned to work as a security guard at Calumet High School on April 18, 2008 (the date of the incident). Plaintiff knew defendants were claiming a security guard at Calumet High School told them that there was an individual riding around, with a bandana on his face, scaring students, with a possible weapon. So plaintiff knew full well the subject matter of the security guard's possible knowledge – which is all Rule 26(a) requires. Plaintiff was well aware of the issues this witness might have information about. What plaintiff is actually arguing is that defendants had a duty to advise him of the actual contents of their interview of Goodwin. But Rule 26(a) does not require this.

Furthermore, plaintiff failed to exercise the same level of diligence to find and interview this witness as did defendants. Plaintiff failed to send an investigator out to the school to talk to Goodwin and so plaintiff did not know exactly what the officer would say. But this is different from not knowing the subject matter of the discoverable information the officer had. The only thing plaintiff did not know is precisely what this witness would testify to. The only way to know that is to interview the witness. Plaintiff failed to do this, though he could easily have done so in the same manner the defendants did. There is nothing in the rules that allows a party to demand of another the content of an interview with a potential witness who was equally accessible to both. There is no indication here that defendants hid this witness or his whereabouts from plaintiff - just the opposite. Both sides had equal access to the witness and could have interviewed him in the same manner. Both sides were on notice as to the subject matter of his knowledge. There is no unfair prejudice here.

Plaintiff also complains that Goodwin's testimony was hearsay. This Court ruled that Goodwin's testimony was not hearsay because it was not offered to prove that there was someone in the area of Calumet High School wearing a clown mask or bandana, but only to establish that students did make such a complaint. *United States. v. Bursey*, 85 F.3d 293, 296 (7th Cir. 1996) ("Statements that are offered not to prove the truth of the matter asserted, but for some other legitimated purpose, do not qualify as hearsay."). That the students made such a complaint to someone is relevant in this case because the officers stake their claim to probable cause or reasonable suspicion on the assertion that

one of the guards at the school, whose name they did not know or could not recall, told them that the students had made such a complaint. That the students told at least one such guard this information makes it much more likely that one of the other guards present that day passed such information along to the officers. Surely, if defendants could have shown that none of the guards recalled being told such a thing by any student, this would have been strong circumstantial evidence that the officers' assertion was not true. The probative value of this evidence was substantial and it was not hearsay. Nor was it likely that the jury would be confused or use the evidence for an improper purpose as the Court instructed the jury at the time of the testimony that any testimony as to what the students said was being offered to prove that the statements were actually made, not that the statements were actually true.

For the reasons given above, plaintiff's motion for judgment as a matter of law or in the alternative for a new trial is denied.

**SO ORDERED**                    **ENTER:** April 17, 2012

*(signature: Ronald A. Guzmán)*

---------------------------------------------
**RONALD A. GUZMÁN**
**District Judge**